IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

HARVEY PATRICK SHORT,

        *Plaintiff,*

v.

OFFICER WEBB, *et al.*,

        *Defendants.*

CIVIL ACTION
NO. 18-4130

PAPPERT, J.                                                                                      September 20, 2019

**<u>MEMORANDUM</u>**

Plaintiff Harvey Patrick Short, proceeding *pro se* and *in forma pauperis*, filed a Second Amended Complaint against Defendants Parole Agent Miller, Corrections Officer Webb, PREA Compliance Officer Owens, and John Doe Correction[s] Officer[1] which the Court dismisses in part for the reasons that follow.

I

Short alleges that he was on parole when, on October 31, 2017, Parole Agent Miller "tackled" him "to the ground and handcuffed [him] behind his back." (Second Am. Compl. ¶ 2, ECF No. 7.) He asserts that Miller "jumped down" on his back, "slammed" his face and head into the concrete, and "dragged" him on the ground. Short alleges that "as a result of" Miller's actions, his "eye was busted open and he sustained scars and lacerations with headaches, blurred vision, dizziness, skin irritation and

---

[1] Defendants do not move to dismiss Plaintiff's claims against John Doe. (Defs.' Mot., ECF No. 14.)

bleeding." (*Id.* ¶ 4.) He claims that "Miller refused and failed to take [him] to the hospital," that Miller instead transported him "to SCI-Graterford as a parole violator for absconding," and that Miller "communicated the physical attack to [Pennsylvania Department of Corrections] officers in the assessment area" when they arrived at SCI-Graterford. (*Id.* ¶¶ 5-7.)

Next, Short alleges that Corrections Officer Webb and a John Doe defendant escorted him to a shower with a half-door in the assessment area that was visible from a hallway where about seven other inmates who were waiting for attention "could view" what was happening to Short. (*Id.* ¶ 9.) He alleges that the inmates standing in the hallway "were recorded on video surveillance." (*Id.*) Once at the shower, Short alleges that he complied with Doe's instruction to strip naked and to put his clothing in a box. (*Id.* ¶ 10.) He asserts that "Doe and a couple of other correction officers started laughing and humiliating [him] for the physical injuries and scars from Agent Miller's attack." (*Id.* ¶ 11.) Short contends that Doe then performed a strip search, including a visible body cavity search during which "Doe got very close up to" his rear end with a flashlight and "touched the Plaintiff's buttocks." (*Id.* ¶ 17.) Short alleges that when he asked Doe what he was doing, Doe looked at him "and smiled." (*Id.* ¶ 19.) Short purportedly complied with Doe's instructions during the search (*id.* ¶ 15) and then complied with Doe's instruction that he shower with a delousing agent. (*Id.* ¶ 20.) Short alleges that "Officer Webb was present when John Doe conducted the . . . body cavity search, and he did not intervene or stop it . . . ." (*Id.* ¶ 33.) Short asserts that after his "shower, a lieutenant showed up and took photographs of [his] injuries" from Miller's alleged "attack." (*Id.* ¶ 21.)

2

Short contends that at some time after the shower, Webb and Doe read his legal mail after Short told the officers that it was legal mail. He alleges that "later," he saw "Nurse Stephanie" and "informed her that he wanted to file a [Prison Rape Elimination Act ('PREA')] complaint against John Doe and Officer Webb." (*Id.* ¶ 23.) He contends the nurse then informed the officers of his intentions. (*Id.*)

Short alleges he filed a PREA complaint, which was assigned to Owens for investigation and preparation of a final report. (*Id.* ¶ 24.) He contends that Owens showed him photographs of Nurse Stephanie, John Doe, and Officer Webb on the Pennsylvania Department of Corrections computer system but "refused to reveal their names and/or identities." (*Id.* ¶ 27.) Short also alleges that "Owens hid, concealed, or destroyed video tape surveillance evidence and photographs to protect the other Defendants from suit." (*Id.* ¶ 26.) He contends that she "failed to investigate and file a final report, failed to sanction Nurse Stephanie for violating PREA confidentiality requirements" and otherwise failed to fulfill her obligations in addressing his PREA complaint. (*Id.* ¶ 28.)

II

Defendants argue Short's claims should be dismissed pursuant to 28 U.S.C. § 1915(g) which limits a prisoner's ability to proceed *in forma pauperis* if he or she has had three or more prior actions or appeals dismissed as frivolous, malicious, or for failure to state a claim upon which relief may be granted. (Defs.' Mem. at 4, ECF No. 14.) "[A] strike under § 1915(g) will accrue only if the entire action or appeal is (1) dismissed explicitly because it is 'frivolous, malicious, or fails to state a claim' or (2) dismissed pursuant to a statutory provision or rule that is limited solely to

3

dismissals for such reasons, including (but not necessarily limited to) 28 U.S.C. §§ 1915A(b)(1), 1915(e)(2)(B)(i), 1915e(2)(B)(ii) or Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Byrd v. Shannon*, 715 F.3d 117, 126 (3d Cir. 2013). "[A] dismissal without prejudice for failure to state a claim does not rise to the level of a strike." *Millhouse v. Heath*, 866 F.3d 152, 161 (3d Cir. 2017). Thus, for example, the dismissal of Plaintiff's claims in *Short v. Amtrak Corp.*, does not constitute a strike in this Circuit because the action was dismissed "without prejudice." No. 06-389, 2007 WL 9718496, at *2 (E.D.N.C. Aug. 16, 2007). "[D]ismissal based on a prisoner's failure to exhaust administrative remedies does not constitute a PLRA strike, unless a court explicitly and correctly concludes that the complaint reveals the exhaustion defense on its face and the court then dismisses the unexhausted complaint for failure to state a claim." *Ball v. Famiglio*, 726 F.3d 448, 460 (3d Cir. 2013), *abrogated in part on other grounds by Coleman v. Tollefson*, ––– U.S. –––, 135 S. Ct. 1759, 1763 (2015). Similarly, a dismissal based on a defendant's absolute or qualified immunity "does not constitute a PLRA strike, including a strike based on frivolousness, unless a court explicitly and correctly concludes that the complaint reveals the immunity defense on its face and dismisses the unexhausted complaint under Rule 12(b)(6) or expressly states that the ground for the dismissal is frivolousness." *Id.* at 463.

Short has been described as a "relentless litigator who has filed a multitude of suits without regard to applicable precedent or res judicata." *Short v. Davis*, No. 10-785, 2011 WL 720203, at *1 (S.D.W. Va. Jan. 18, 2011), report and recommendation adopted, No. 10-785, 2011 WL 710574 (S.D.W. Va. Feb. 22, 2011)*; see also Short v. Rubenstein*, No. 2:14-CV-16506, 2015 WL 7423814, at *3 (S.D.W. Va. Oct. 29, 2015)

4

("plaintiff is an experienced pro se litigant, having filed 19 prior civil cases in this court alone"), report and recommendation adopted in part, rejected in part, No. 2:14-CV-16506, 2015 WL 7430989 (S.D.W. Va. Nov. 20, 2015); *Short v. Amtrak*, 2007 WL 9718496, at *1 ("Indeed, Short has filed dozens of lawsuits and appeals while incarcerated."). However, the Court cannot conclude that Section 1915(g) bars Short from pursuing his claims in this action without paying the Court's filing fee because Defendants have not shown that he has accrued three strikes as defined under Third Circuit precedent.

Short accrued a strike in this Court with the dismissal of his complaint with prejudice for failure to state a claim in *Short v. Payne*, No. 15-5873, 2016 WL 1594791, at *6 (E.D. Pa. Apr. 20, 2016) (dismissing Plaintiff's complaint for failure to state a claim and denying leave to amend). He accrued a second strike in *Short v. Bailey-Walker*,[2] when the Court in the Southern District of West Virginia dismissed his case after adopting the proposed findings and recommendation of the Magistrate Judge, including a recommendation that the "presiding District Judge count this case as a frivolous case . . . ." No. 09-01096, 2009 WL 6327476, at *2 (S.D. W. Va. Oct. 26, 2009), report and recommendation adopted, 2010 WL 1379964 (S.D. W. Va. Mar. 30, 2010), aff'd, 393 F. App'x 980 (4th Cir. 2010). Because the District Court adopted the Magistrate Judge's explicit recommendation that Short's complaint be dismissed as frivolous, the decision counts as a strike in accordance with the Third Circuit's decision

---

[2] This case bears the same name as a case Defendants attached to their supplement to their motion to dismiss – *Short v. Bailey-Walker* (S.D. Va. Civ. A. No. 07-2007) (*see* Defs.' Supplemental Br. Ex. 2, ECF No. 15-2) – but it is a later-filed case with a separate civil action number (S.D. W. Va. Civ. A. No. 09-1096). The earlier *Bailey-Walker* decision does not constitute a strike in the Third Circuit because the 2007 action was "dismissed without prejudice." (*See* ECF No. 15-2 at 23.)

in *Ball* even though the Magistrate Judge also recommended that the Court dismiss Plaintiff's claims because "Judge Bailey-Walker is absolutely immune from liability in this civil action." *Short v. Bailey-Walker*, 2009 WL 6327476, at *2; *see also Ball*, 726 F.3d at 463.

However, Defendants' citations to other decisions regarding Short's many lawsuits do not show that any of his numerous cases were dismissed in a way that constitutes a strike in this Circuit. Plaintiff's claims in *Short v. United States* (No. 01-408, W.D.N.C.) were dismissed at least in part because he had "not alleged nor provided any evidence that he ha[d] exhausted his administrative remedies." (Defs.' Supplemental Br., Ex. 3, ECF No. 15-3 at 13.) The decision does not clearly support the imposition of a strike because it does not reflect a conclusion that the exhaustion defense was "clear from the face of the complaint." *See Ball*, 726 F.3d at 460 ("dismissal based on a prisoner's failure to exhaust administrative remedies does not constitute a PLRA strike, unless a court *explicitly* and correctly concludes that the complaint reveals the exhaustion defense on its face") (emphasis added). Dismissal of Short's claims in *Short v. Carper* is not a strike in the Third Circuit because the dismissal was "without prejudice." No. 07-00255, 2008 WL 652886, at *1 (S.D.W. Va. Mar. 10, 2008). In *Short v. Manchin*, the Court denied Plaintiff's motion for leave to proceed *in forma pauperis* and his claims were dismissed without prejudice pursuant to § 1915(g). No. 10-28, 2010 WL 4975482, at *1 (N.D. W. Va. 2010). This type of dismissal likewise fails to satisfy the requirements set forth in *Byrd* and *Millhouse v. Heath*.

Plaintiff may be a serial manipulator of the civil justice system, but the Court is precluded from requiring him to pay the filing fee before he is permitted to proceed with

6

his claims in this action. The Court may later revoke Short's *in forma pauperis* status if Defendants are able to show that any of his prior actions resulted in a decision that meets the Third Circuit's requirements for a strike pursuant to Section 1915(g).

III

A

Defendants also move to dismiss Plaintiffs' Second Amended Complaint for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. To survive dismissal, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the facts pled "allow[ ] the court to draw the reasonable inference that [a] defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'— 'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

When the complaint includes well-pleaded factual allegations, the Court "should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 679). However, this "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted). This plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial

7

experience and common sense." *Id.* (quoting *Connelly*, 809 F.3d at 786–87).

B

Because Short is proceeding *pro se*, the Court "must liberally construe his pleadings." *Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003) (citation omitted). "Courts are to construe complaints so 'as to do substantial justice,' keeping in mind that *pro se* complaints in particular should be construed liberally." *Bush v. City of Phila.*, 367 F. Supp. 722, 725 (E.D. Pa. 2005) (quoting *Alston v. Parker*, 363 F.3d 229, 234 (3d Cir. 2004)). Moreover, in a § 1983 action, the Court must "apply the applicable law, irrespective of whether a *pro se* litigant has mentioned it by name." *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002) (quoting *Holley v. Dep't of Veteran Affairs*, 165 F.3d 244, 247–48 (3d Cir. 1999)); *see also Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996) ("Since this is a § 1983 action, the [*pro se*] plaintiffs are entitled to relief if their complaint sufficiently alleges deprivation of any right secured by the Constitution."). At the same time, *pro se* litigants "must allege sufficient facts in their complaints to support a claim . . . At the end of the day, they cannot flout procedural rules—they must abide by the same rules that apply to all other litigants." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).

IV

A

Plaintiff's Second Amended Complaint alleges that he "was a parolee" when Miller took him into custody and that he was "transported . . . to SCI-Graterford as a parole violator for absconding." (Second Am. Compl. ¶¶ 1 and 6.) "[P]arole is an established variation on imprisonment of convicted criminals . . . . The essence of

parole is release from prison, before the completion of sentence, on the condition that the prisoner abide by certain rules during the balance of the sentence." *Morrissey v. Brewer*, 408 U.S. 471, 477 (1972). Given Plaintiff's allegation that he was on parole at the time of the events alleged in the Complaint, the Court will assess his claims pursuant to the standards governing claims for individuals serving a sentence, rather than pursuant to the standards governing pretrial detainees' claims. *Cf. Bistrian v. Levi*, 696 F.3d 352, 372-374 (3d Cir. 2012) ("[P]retrial detainees have federally protected liberty interests that are different in kind from those of sentenced inmates . . .") (citation omitted).

Plaintiff's Second Amended Complaint asserts claims against Defendants pursuant to 42 U.S.C. § 1983 for violations of the First, Fourth, Eighth and Fourteenth Amendments. (Second Am. Compl. ¶¶ 35-37.) However, as a parolee rather than a pretrial detainee, most of his claims are appropriately brought and considered under the First, Fourth and Eighth Amendments alone. *Cf. United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997) ("[I]f a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process."). Except for a possible access to the courts claim against Defendant Webb, which is insufficiently pleaded as is further set forth below, Short does not allege facts that would support any other independent violation of his right to due process under the Fourteenth Amendment. For instance, he makes no claim that Defendants failed to give him notice of his charged parole violations or that they interfered with his access to a parole revocation proceeding. Plaintiff's Fourteenth Amendment claims will

9

be dismissed. [3]

B

1

The Fourth Amendment governs Plaintiff's excessive force claim against Miller. *See Graham v. Connor*, 490 U.S. 386, 395 (1989) (holding that the Fourth Amendment governs all claims of excessive force during an arrest). Defendants concede that if Plaintiff's claims are not barred under the three strikes rule, "the claim related to [Miller's] use of force . . . require[s] factual development to show reasonable use of force and de minimus injury." (Defs.' Mem. at 5.) Short's excessive force claim against Miller survives accordingly.

2

Short also asserts state law claims against Miller for "assault, battery, and intentional infliction of mental distress." (Second Am. Compl. ¶ 41.) "In making a lawful arrest, a police officer may use such force as is necessary under the circumstances to effectuate the arrest. The reasonableness of the force used in making the arrest determines whether the police officer's conduct constitutes an assault and battery." *Renk v. City of Pittsburgh*, 641 A.2d 289, 293 (Pa. 1994). Because the allegations supporting Plaintiff's state law claims against Miller are the same as the allegations that support his excessive force claim, the Court also declines to dismiss

---

[3] Because it is clear from the face of the Second Amended Complaint that Plaintiff's claims are appropriately brought as claims for violations of his rights under other Amendments to the Constitution, his Fourteenth Amendment claims will be dismissed with prejudice with the following exception: Plaintiff will be granted leave to amend his Fourteenth Amendment claim against Webb to the extent that he is able to assert sufficient facts to support a claim for denial of access to the courts.

10

these claims absent further discovery into the facts surrounding the circumstances of Plaintiff's arrest.[4]

3

Defendants argue that Plaintiff's second constitutional claim against Miller – that Miller was deliberately indifferent to his serious medical needs (Second Am. Compl. ¶ 38) – fails to state a claim. To plead that Miller denied him his right to adequate medical care in violation of the Eighth Amendment, Plaintiff must allege facts to show that Miller was (1) "deliberately indifferent to [his] medical needs and (2) that those needs were serious." *Rouse v. Plaintier*, 182 F.3d 192, 197 (3d Cir. 1999). To allege deliberate indifference, Plaintiff must plausibly allege that Miller "'kn[ew] of and disregard[ed] an excessive risk to inmate health or safety.'" *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)); *see also Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004) (holding that deliberate indifference may be shown where an officer "den[ies] reasonable requests for medical treatment . . . and such denial exposes the inmate to undue suffering or the threat of tangible residual injury"). A medical need is serious if it is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987).

Short claims that Miller refused to take him to the hospital even though his "eye was busted open and he sustained scars and lacerations with headaches, blurred vision,

---

[4] Defendants do not argue that the doctrine of sovereign immunity bars Plaintiff's state law claims against Miller. (Defs.' Mem. At 11-14.)

dizziness, skin irritations, and bleeding[.]" (Second Am. Compl. ¶¶ 4, 5.) He contends that "Miller communicated the physical attack to PA DOC officers in the assessment area" when he arrived at SCI-Graterford but does not allege that he was then provided with medical care. (Second Am. Compl. ¶ 7.) Short sufficiently alleges that he had an injury that was obvious to a lay person and that Miller disregarded an excessive risk to Short's health by not adequately responding to a reasonable request for medical care. Plaintiff's allegation that he "later seen Nurse Stephanie" (Second Am. Compl. ¶ 23) is not enough to make implausible his Eighth Amendment claim for denial or delay of medical care because the Second Amended Complaint does not allege that Miller had reason to believe that Short would receive medical care when Short arrived at SCI-Graterford. Nor does it allege when Short saw the nurse or that he was seen in response to Miller's alleged report to the unidentified officers in the assessment area. Whether Short can ultimately prove his Eighth Amendment claim against Miller is a question that requires further factual development.

C

1

Short asserts claims against Webb for Webb's alleged actions (or inactions) when Plaintiff was subjected to a body cavity search after arriving at SCI-Graterford. He contends that "[t]he body cavity search was unnecessary and conducted in an unconstitutional and illegal manner," and that Webb did not intervene or stop the search conducted by the John Doe defendant. (Second Am. Compl. ¶¶ 30, 33.) Short also contends that the search was "unreasonable, abusive, humiliating and harassing in

violation of PA DOC Policy DC-ADM-203."[5] (*Id.* ¶ 29.) The allegations against Webb do not state a claim for a violation of Short's constitutional rights.

Prison strip search policies that require detainees to "expose their body cavities for visual inspection" during searches conducted upon arrival at a correctional institution do not violate the Constitution because "[c]orrectional officials have a legitimate interest, indeed a responsibility, to ensure that jails are not made less secure by reason of what new detainees may carry in on their bodies." *Florence v. Bd. of Chosen Freeholders of Cty. of Burlington*, 566 U.S. 318, 322 and 324 (2012) (citation omitted); *see also Small v. Wetzel*, 528 F. App'x 202, 207 (3d Cir. 2013) ("[I]t is constitutional to conduct a full strip search of an individual detained in the general population of a jail, regardless of the reason for detention or the existence of reasonable suspicion that the individual is concealing something.")(citation omitted). Short's allegations that the strip search was humiliating and conducted in view of other inmates do not "nudge[ his] claims across the line from conceivable to plausible . . . ." *Twombly*, 550 U.S. at 570 (2007). Body cavity strip "searches, even if embarrassing and humiliating, do not violate the constitution." *Millhouse v. Arbasak*, 373 F. App'x 135, 137 (3d Cir. 2010). Short's use of the terms unreasonable, abusive, and harassing to describe the search likewise fail to make plausible a claim that the search was unconstitutional because it was "excessive, vindictive, harassing, or unrelated to any

---

[5] Short also asserts that Webb is "liable under PA DOC Policy DC-ADM-203." (Second Am. Compl. ¶ 39.) This claim is meritless because the cited PA DOC policy regarding searches of inmates and cells does not create a cause of action that is separate from his other claims. *Cf. Bowens v. Wetzel*, 674 F. App'x 133, 137 (3d Cir. 2017) (explaining that a plaintiff "may not attempt to enforce statutes or policies that do not themselves create a private right of action by bootstrapping such standards into a constitutional deliberate indifference claim").

13

legitimate penological interests." *Brown v. Blaine*, 185 F. App'x 166, 169 (3d Cir. 2006). The Second Amended Complaint lacks well-pleaded factual allegations sufficient to support Short's conclusory characterization of the search that Webb is alleged to have observed.

Short does claim that Doe (not Webb) "maliciously and intentionally touched" his buttocks, and that when he was touched, he "moved forward to avoid further contact from John Doe believing John Doe was about to penetrate him." (Second Am. Compl. ¶ 17.) This allegation is insufficient to raise a constitutional claim against Webb. The Third Circuit considered a similar set of allegations in *Ricks v. Shover*, where the plaintiff alleged that a corrections officer "participated in" alleged sexual abuse "by failing to end it." 891 F.3d 468, 479 (3d Cir. 2018). The Court held that the claim was "insubstantial" as pleaded "because the encounter was so brief that, even viewed in the light most favorable to [the plaintiff, the defendant] would have had no opportunity to instruct [the other officer] to stop." *Id.* Liability will only attach where a plaintiff alleges enough facts to show that a defendant had a "realistic and reasonable opportunity to intervene." *Smith v. Mensinger*, 293 F.3d 641, 651 (3d Cir. 2002). Those facts are not present in Plaintiff's Second Amended Complaint.

Plaintiff's Fourth and Eighth Amendment claims against Webb will be dismissed without prejudice to amendment if Short can allege sufficient facts to state a claim.

2

Short asserts a claim against Webb "for medical malpractice for not being a doctor or physician while conducting a body cavity search." (Second Am. Compl. ¶ 40.) This claim will be dismissed because, as Short's own pleading concedes Webb is not

alleged to be a medical professional who could be subject to a professional negligence claim. It will be dismissed with prejudice, because it is clear from the face of the Second Amended Complaint that amendment would be futile.

3

Short alleges Webb's conduct gives rise to state law claims for "assault, battery, and intentional infliction of mental distress." (Second Am. Compl. ¶ 41.) However, the Second Amended Complaint alleges only that Webb "was present" during the alleged strip search and that "he did not intervene or stop it, but allowed John Doe to do it." (Second Am. Compl. ¶ 33.) Short fails to state a claim against Webb for intentional infliction of emotional distress because he has not alleged conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society."[6] *Hoy v. Angelone*, 720 A.2d 745, 754 (Pa. 1998) (citation omitted).

Plaintiff also fails to state a claim against Webb for either assault or battery. Under Pennsylvania law, an "'assault is an intentional attempt by force to do injury to the person of another, and a battery is committed whenever the violence menaced in an assault is actually done, though in ever so small a degree, upon the person.'" *Renk v. City of Pittsburgh*, 641 A.2d 289, 293 (Pa. 1994) (citing *Cohen v. Lit Bros.*, 70 A.2d 419, 421 (Pa. Super. Ct. 1950)). Short's meager allegations regarding Webb's failure to

---

[6] Examples of outrageous behavior include: a driver fatally striking plaintiff's son and, without notifying the authorities, burying the body in a field, *Papieves v. Lawrence*, 263 A.2d 118 (Pa. 1970); defendants intentionally falsifying records to implicate plaintiff in a homicide for which plaintiff later went to jail, *Banyas v. Lower Bucks Hosp.*, 437 A.2d 1236 (Pa. Super. Ct. 1986); and a doctor telling the press that plaintiff was suffering from a fatal disease when the doctor knew that information was false, *Chuy v. Eagles Football Club*, 595 F.2d 1265 (3d Cir. 1979).

15

intervene are insufficient to plausibly allege a claim against him for assault or battery.[7]

Plaintiff's state law claims against Webb will be dismissed without prejudice.[8]

4

Short's contention that Defendant Webb caused him harm when he and the John Doe defendant read his "legal mail" could conceivably give rise to a free speech claim or an access-to-courts claim, though neither is sufficiently pled. Short's contention that Webb intentionally read his legal mail on a single occasion is insufficient to state a claim under the First Amendment. *See Nixon v. Secretary Pa. Dept. of Corr.*, 501 F. App'x. 176, 178 (3d Cir. 2012) (holding that a single, isolated incident where a prisoner's mail was confiscated and destroyed did not state a claim for violation of the First Amendment). The allegation likewise fails to state an access-to-courts claim under the Fourteenth Amendment because Plaintiff has not alleged any facts to show that Webb caused him to suffer an "actual injury" when Webb read his mail, "for instance, that he was prevented from asserting a 'nonfrivolous' and 'arguable' claim."

---

[7] Even if Short alleged enough facts to make plausible his state law claims against Webb, they would be subject to dismissal under the doctrine of sovereign immunity. Defendants contend that sovereign immunity bars Short's claims against Webb because his actions "had to be within the scope of [his] duties." (Defs.' Mem. at 14.) Plaintiff's Second Amended Complaint does not suggest that Webb had any personal motivation to participate in Plaintiff's strip search (or to open his mail), "[t]hus, it would appear that [Webb's] actions were motivated, at least in part and perhaps in whole, to serve the employer." *Robus v. Pa. Dep't of Corr.,* No. 04-2175, 2006 WL 2060615, at *9 (E.D. Pa. July 20, 2006); *see also Knauss v. Shannon*, No. 08-1698, 2010 WL 569829, at *15 (M.D. Pa. Feb. 12, 2010) (dismissing the plaintiff's assault claim against a corrections officer defendant because, "[r]egardless of whether contact occurred," the defendant "was acting within the scope of his employment" at the time of the alleged assault). Absent the application of an exception not present here, Webb is shielded from suit under Pennsylvania law because Plaintiff has not set forth facts to show that Webb's actions were outside the scope of his employment. *See* 1 Pa. C.S. § 2310; 42 Pa C.S. § 8521-22.

[8] If Short intends to file amended state law claims, he must plead facts sufficient to show that the claims are not barred by sovereign immunity.

16

*Tapp v. Proto*, 404 F. App'x 563, 566 (3d Cir. 2010), *citing Christopher v. Harbury*, 536 U.S. 403, 415 (2002). The Court will dismiss this claim with leave to amend to the extent that Short is able to allege enough facts to support a claim that Webb violated Short's rights under the First or Fourteenth Amendments by opening his mail.

D

Finally, Short alleges that Owens' actions regarding his PREA complaint violated his rights under the First Amendment. (Second Am. Compl. ¶ 35.) To state a First Amendment retaliation claim for reporting alleged violations of the PREA, Short "must allege that: (1) he was engaged in constitutionally protected conduct, (2) he suffered some adverse action at the hands of prison officials, and (3) his constitutionally protected conduct was a substantial or motivating factor in the decision to take that action." *Wisniewski v. Fisher*, 857 F.3d 152, 156 (3d Cir. 2017) (citation and internal quotations omitted). Defendants argue that Short's claim against Owens fails "because he alleges no injury, the claim with the alleged facts is not plausible, and he does not and cannot show that the alleged retaliation would prevent a reasonable person in his position from asserting a PREA claim." (Defs.' Mem. at 10.)

Given that Short alleges he was retaliated against for filing a PREA complaint against Webb and John Doe, he has satisfied the first element: that he engaged in protected conduct. *See Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016). A prisoner plaintiff can satisfy the second element with allegations showing that the alleged adverse action "was sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights." *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001) (citation and alteration omitted). The Third Circuit has "held that the following actions were

sufficient to establish adversity: several months in disciplinary confinement; denial of parole, financial penalties, and transfer to an institution whose distance made regular family visits impossible; and placement in administrative segregation that severely limited access to the commissary, library, recreation, and rehabilitative programs." *Dunbar v. Barone*, 487 F. App'x 721, 723 (3d Cir. 2012).

Short alleges that Owens (1) "concealed the names of John Doe, Officer Webb, and Nurse Stephanie" from him; (2) "hid, concealed, or destroyed video tape surveillance evidence and photographs to protect the other Defendants from suit;" and (3) "failed to investigate and file a final report . . . ." (Second Am. Compl. ¶¶ 25-27.) In the unlikely event these allegations are adequate to plead the adverse action requirement, the Second Amended Complaint cannot withstand dismissal because it does not allege enough facts relating to the third element of Plaintiff's First Amendment retaliation claim: "a causal link between the exercise of his constitutional rights and the adverse actions taken against him," or more specifically, "that his constitutionally protected conduct was a substantial or motivating factor in the decision" to take that action. *Rauser*, 241 F.3d at 333. Short has not plausibly alleged that that Owens' actions or her failure to investigate[9] were motivated by retaliatory animus. Absent such allegations, his First Amendment retaliation claim cannot

---

[9] To the extent that Short instead attempts to state a claim against Owens for her failure to investigate his PREA claim, the claim is also dismissed. The PREA does not establish a private right of action. *See Bowens v. Employees of the Dep't of Corr.*, No. 14-2689, 2016 WL 3269580, at *3 (E.D. Pa. June 15, 2016) ("Plaintiff cannot . . . bring a private action to enforce obligations set forth in the PREA, whether through the statute itself or through his attempt to enforce the DOC PREA policy via section 1983."), aff'd sub nom. *Bowens v. Wetzel*, 674 F. App'x 133 (3d Cir. 2017). Further, "an allegation of a failure to investigate, without another recognizable constitutional right, is not sufficient to sustain a section 1983 claim." *Graw v. Fantasky*, 68 F. App'x 378, 383 (3d Cir. 2003) (internal quotation marks omitted) (citing *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 195–96 (1989)).

proceed. *See Fennell v. Kuykendall*, No. 18-4226, 2019 WL 2448659, at *7 (E.D. Pa. June 7, 2019) ("a retaliation claim cannot rest on the bare assertion the alleged retaliation is motivated by retaliatory animus"); *cf. Alexander v. Fritch*, 396 F. App'x 867, 872 (3d Cir. 2010) (affirming grant of summary judgment on First Amendment retaliation claim where there was no evidence beyond the plaintiff's "bare assertions" to support his claim that the defendants' denials of his grievances were "motivated by retaliatory animus").

Short's First Amendment claim against Owens is dismissed without prejudice to amendment to the extent that Plaintiff can sufficiently allege that Owens' alleged actions were driven by the retaliatory animus required to support such a claim.

V

Plaintiff has already filed three iterations of his claims, but the Third Circuit has instructed that if a complaint is vulnerable to dismissal for failure to state a claim, the District Court must permit a curative amendment, unless amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). To the extent that he is able to do so consistent with this Memorandum, Plaintiff may have one more opportunity to amend his complaint as specified in the attached Order.

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.